IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CR-2-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SHAWN SCHENCK, | ) | |
| | ) | |
| Defendant. | ) | |

On January 7, 2021, Shawn Schenck ("Schenck" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 433]. On April 19, 2021, Schenck, through counsel, filed a memorandum and exhibits in support [D.E. 448, 449]. On April 29, 2021, the government responded in opposition [D.E. 453]. On May 7, 2021, Schenck replied [D.E. 454]. As explained below, the court denies Schenck's motion.

I.

On May 11, 2015, pursuant to a written plea agreement, Schenck pleaded guilty to engaging in a continuing criminal enterprise. See [D.E. 136, 137, 140]. On May 11, 2016, Senior United States District Judge Malcolm J. Howard held Schenck's sentencing hearing and adopted the facts as set forth in the Presentence Investigation Report ("PSR") except as to matters disputed. See [D.E. 243, 351]; Sent. Tr. [D.E. 369] 13, 36. After addressing Schenck's objections, Judge Howard determined Schenck's total offense level to be 35, his criminal history category to be IV, and his advisory guideline range to be 240 to 293 months' imprisonment. See Sent. Tr. [D.E. 369] 13–24. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. §

3553(a), Judge Howard sentenced Schenck to 276 months' imprisonment. See id. at 25–36; [D.E. 356]. Schenck appealed. See [D.E. 354]. On February 17, 2017, the United States Court of Appeals for the Fourth Circuit dismissed Schenck's appeal in part and affirmed in part. See United States v. Schenck, 676 F. App'x 212, 212–13 (4th Cir. 2017) (per curiam) (unpublished).

On June 25, 2018, Schenck moved to vacate his sentence under 28 U.S.C. § 2255 based on alleged ineffective assistance of counsel. See [D.E. 402]. On August 27, 2018, the government moved to dismiss Schenck's motion. See [D.E. 407, 408]. On February 25, 2019, Schenck responded in opposition. See [D.E. 412]. On July 16, 2020, Judge Howard granted the government's motion to dismiss and dismissed Schenck's section 2255 motion. See [D.E. 423, 424]. Schenck did not appeal.

On January 7, 2021, Schenck moved for compassionate release [D.E. 433]. The government opposes the motion [D.E. 453]. On May 27, 2021, the case was reassigned to the undersigned.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a

2

sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not

---

>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

4

updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Schenck seeks compassionate release. See [D.E. 433, 448, 454]. On December 25, 2020, Schenck submitted a compassionate release request to the warden but received no response. See [D.E. 448] 1; [D.E. 448-2]. The government has not invoked section 3582's exhaustion requirement. See United States v. Muhammad, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021). Accordingly, the court assumes Schenck exhausted his administrative remedies and addresses Schenck's motion on the merits. See id.

5

Schenck seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Schenck cites the COVID-19 pandemic and his medical conditions, including hypertension, type 2 diabetes, obesity, diabetic nerve damage, and his hospitalization for MRSA. See [D.E. 433] 2; [D.E. 448] 1–2, 12–17; [D.E. 449]. Schenck also cites the conditions at FCI Danbury and his rehabilitation efforts. See [D.E. 433] 1–2; [D.E. 448] 2–6, 18; [D.E. 448-4].

The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Schenck argues that his health conditions—especially his hypertension, diabetes, and obesity—place him at a heightened risk of serious infection from COVID-19. See [D.E. 443] 2–3; [D.E. 448] 1–2, 15–17. However, Schenck has not demonstrated that he will not recover from these conditions or that they cannot be treated while Schenck serves his sentence. Furthermore, Schenck does not argue that the BOP is not treating his health conditions.

Schenck has refused the COVID-19 vaccine. See [D.E. 449] 28; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."). Schenck provides no medical or other reason why he cannot receive the vaccine. Nevertheless, Schenck argues that the court should not rely on the availability of the vaccine to deny his motion. See [D.E. 454] 1–5. However, the court rejects Schenck's argument in light of the "growing consensus" of district courts finding that refusing the vaccine "weighs against a finding of extraordinary and compelling circumstances." United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4

6

(D. Ariz. Apr. 5, 2021) (collecting cases). Accordingly, reducing Schenck's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Schenck's medical conditions, and Schenck's rehabilitation efforts are extraordinary and compelling reasons under section 3582(c)(1)(A).[2] Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, the wide availability of COVID-19 vaccines greatly diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Schenck's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Schenck is 45 years old and engaged in extraordinarily serious criminal conduct between January and December 2014. See PSR [D.E. 243] ¶¶ 28–41. Schenck was a leader of the MOB, a street gang affiliated with the United Blood Nation, and directed high-volume drug trafficking between California and Clarkton, North Carolina. See id. Schenck was held accountable for 27.64 grams of cocaine, 78.6493 grams of heroin, 9.74 grams of methamphetamine, and 48 units of prescription pain medications. See id. ¶ 41. Additionally, Schenck directed members of his gang to shoot Houston Smith, a rival drug dealer and gang member, which they did. See id. ¶¶ 32–33,

---

[2] The court recognizes Schenck's argument that the specific conditions at FCI Danbury are an extraordinary and compelling reason for compassionate release. See [D.E. 448] 2–7. However, no inmates or staff have currently tested positive for COVID-19. See http://www.bop.gov/coronavirus (last visited Oct. 29, 2021).

37–38. Schenck also ordered gang members to assault or kill at least two other individuals. See Sent. Tr. [D.E. 369] 32–33. Moreover, after Schenck's arrest, Schenck continued to lead his gang from prison. See PSR ¶¶ 40–41. Schenck is a recidivist with convictions for manufacturing or distribution of cocaine, tampering with a public record, possession of a schedule II controlled substance, and possession of a schedule IV controlled substance. See id. ¶¶ 46–48. Schenck also has performed poorly on supervision. In fact, Schenck committed the offense for which he is currently incarcerated while on state supervised release. See id. ¶ 48. Nonetheless, Schenck has taken some positive steps while incarcerated on his federal sentence. He has completed some educational and vocational training courses, as well as completed an anger management class and drug treatment. See [D.E. 448] 18; [D.E. 448-4]. Schenck lacks a detailed release plan. See [D.E. 453] 23–24; [D.E. 448-5] 1.

The court must balance Schenck's positive rehabilitative efforts against his extraordinarily serious criminal conduct. The court has considered Schenck's exposure to COVID-19, his medical conditions, lack of detailed release plan, and his rehabilitation efforts. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 (including offering Schenck the vaccine), the section 3553(a) factors, Schenck's arguments, the government's persuasive response, and the need to punish Schenck for his extraordinarily serious and violent criminal behavior, to incapacitate Schenck, to promote respect for the law, to deter others, and to protect society, the court denies Schenck's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL

Case 7:15-cr-00002-D   Document 458   Filed 11/01/21   Page 8 of 9

205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Schenck's request for home confinement, Schenck seeks relief under the CARES Act. See [D.E. 433] 2; [D.E. 448] 19. Although the court recognizes that Schenck may have been on a list of people meeting the BOP's requirements for home confinement, see [D.E. 433] 2, the CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Schenck asks the court merely to recommend home confinement to the BOP, the court declines. Thus, the court dismisses Schenck's request for home confinement.

II.

In sum, the court DENIES defendants's motion for compassionate release [D.E. 433], and DISMISSES defendant's request for home confinement [D.E. 433, 448].

SO ORDERED. This _1_ day of November, 2021.

JAMES C. DEVER III
United States District Judge

9